# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT E. BRYANT,　　　　　　　　　　Case No. 1:09-cv-810
　　　　Plaintiff,　　　　　　　　　　　　Weber, J.
　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　vs.

COMMISSIONER OF　　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　　**RECOMMENDATION**
　　　　Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB) and Supplemental Security Income (SSI).  This matter is

before the Court on plaintiff's Statement of Errors (Doc. 5) and the Commissioner's response in

opposition. (Doc. 7).

## PROCEDURAL BACKGROUND

Plaintiff Robert E. Bryant was born in 1969 and has a high school education.  His past

relevant work was as a heavy equipment operator and industrial painter, construction worker,

loader/operator, and sandblaster.  Plaintiff filed applications for DIB and SSI on January 24,

2006, alleging a disability onset date of December 2, 2002, due to arthritis and two herniated

discs in his back.  His applications were denied initially and upon reconsideration.  Plaintiff then

requested and was granted a *de novo* hearing before an administrative law judge (ALJ).  Plaintiff,

who was represented by counsel, appeared at the hearing before ALJ Amelia G. Lombardo.

On February 18, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI

applications.  The ALJ determined that plaintiff suffers from degenerative disc disease of the

lumbar spine which is severe with the meaning of the Social Security Act, but she determined

that such impairment does not meet or equal the level of severity described in the Listing of

Impairments (Listing). (Tr. 16-17).  According to the ALJ, plaintiff retains the residual functional

capacity (RFC) to perform light work, except that he must be permitted the opportunity to change

position every 30 minutes, he cannot crawl or climb ladders, ropes or scaffolds, but he can

occasionally climb stairs, and he is limited to occasional stooping, kneeling, and crouching.  (Tr.

17).  The ALJ determined that plaintiff's subjective allegations concerning his symptoms are not

credible to the extent they are inconsistent with the RFC assessment.  (Tr. 17-18).  The ALJ

further determined that plaintiff is unable to perform his past relevant work.  (Tr. 21).  However,

using the medical vocational guidelines (the "grid") set forth in Rule 202.21 as a framework for

decision-making and relying on the testimony of a vocational expert (VE), the ALJ decided that

plaintiff is able to perform a significant number of other jobs in the national economy.  (Tr. 21-

22).  Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

Plaintiff's request for review by the Appeals Council was denied, making the decision of

the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g). The Court's sole function is to determine whether the record as a whole contains

substantial evidence to support the Commissioner's decision.  The Commissioner's findings

stand if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairment must render plaintiff unable to engage in the work he previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes him from performing the work he previously performed or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines

3

whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 529 (6th Cir. 1981).

  Plaintiff has the burden of establishing disability by a preponderance of the evidence.

4

*Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d

1181 (6th Cir. 1971). To rebut a prima facie case, the Commissioner must come forward with

particularized proof of plaintiff's individual capacity to perform alternate work considering

plaintiff's age, education, and background, as well as the job requirements. *O'Banner v.*

*Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of*

*H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner

is entitled to rely on the grid to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart

P, Appendix 2. *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute

disability. *Kirk,* 667 F.2d at 538. In order to find plaintiff disabled on the basis of pain alone, the

Commissioner must first determine whether there is objective medical evidence of an underlying

medical condition. If there is, the Commissioner must then determine: (1) whether the objective

medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the

underlying medical impairment is severe enough that it can reasonably be expected to produce

the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir.

1986). In addition to the objective medical evidence, the Commissioner must consider other

evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and

others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as

statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v.*

*Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)). Specific factors

relevant to plaintiff's allegations of pain include his daily activities; the location, duration,

frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage,

effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Id.*; 20 C.F.R. § 404.1529(a). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Where the medical evidence is consistent and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, there is both substantially conflicting medical evidence as well as substantial evidence supporting a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)

6

("The medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating

physician's opinion is entitled to weight substantially greater than that of a non-examining

medical advisor. *Kinsella,* 708 F.2d at 1060. If a treating physician's "opinion on the issue(s) of

the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see*

*also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378

F.3d 541, 544 (6th Cir. 2004). "The treating physician doctrine is based on the assumption that a

medical professional who has dealt with a claimant and his maladies over a long period of time

will have a deeper insight into the medical condition of the claimant than will a person who has

examined a claimant but once, or who has only seen the claimant's medical records." *Barker v.*

*Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

  The Social Security regulations likewise recognize the importance of longevity of

treatment, providing that treating physicians "are likely to be the medical professionals most able

to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical

evidence, the ALJ must consider other pertinent factors such as the nature and extent of the

treatment relationship, the frequency of examination, the medical specialty of the treating

physician, how well-supported by evidence the opinions are, and how consistent an opinion is

7

with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994) The Court may award benefits where the proof of disability is strong or overwhelming and evidence to the contrary is lacking. *Id. See also Felisky*, 35 F.3d at 1041. Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (Table), 1990 WL 94, at *3 (6th Cir. 1990) (unpublished). Remand for further consideration under Sentence Four of 42 U.S.C. § 405(g) may also be appropriate to correct an error of law by the Secretary in applying the regulations or when substantial evidence to support one of his factual findings is lacking. *Faucher*, 17 F.3d at 175-176.

## ASSIGNMENTS OF ERROR

Plaintiff assigns six errors in this case: (1) the ALJ's finding that plaintiff can perform sustained work activities is not supported by substantial evidence; (2) the ALJ failed to comply with 20 C.F.R. § 404.1527 by not according adequate weight to the opinion of the treating physician and by not providing reasons for rejecting the treating physician's RFC; (3) the ALJ failed to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating physician; (4) the ALJ erred in failing to provide a specific rationale for rejecting the plaintiff's testimony as required by Social Security Regulation 96-7p; (5) the ALJ failed to properly apply the Sixth Circuit pain standard and made credibility findings which are not based on a full and accurate reading of the record; and (6) the ALJ/Appeals Council failed to give due weight to the uncontroverted opinion of a treating physician that plaintiff's condition of Arachnoiditis met or equaled Listing 1.04 B, and the ALJ/Appeals Council failed to obtain a medical opinion.

For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded.

## MEDICAL EVIDENCE

After injuring his back at work in December of 2002, plaintiff underwent an MRI of the lumbar spine on January 9, 2003. (Tr. 183). The MRI report noted a history of lumbar strain and bilateral leg tingling. The impression was "a small left paracentral disc protrusion, contacting the left SI nerve, but not significantly affecting the exit foramina." (Tr. 183-184). Plaintiff went to the hospital emergency room approximately one month later on February 10, 2003, complaining of back pain that had been ongoing for a period of two months. (Tr. 172). The final diagnosis

9

was acute lumbosacral strain with severe pain.

Plaintiff began treatment with a chiropractor, Kathryn Bednarczuk-Youtsler, D.C., in February 2003 for pain and tingling in his lower back and both legs. He continued treatment with her until June 2005. (Tr. 257-270).

Plaintiff returned to the emergency room on March 31, 2003, with acute onset of back pain following an epidural injection of steroids. (Tr. 169). Plaintiff was noted to be "in some distress secondary to pain." (Tr. 169). His neurological exam was normal. He received intramuscular morphine sulfate and Vistaril, which the exam notes indicated were quite effective in relieving his pain and muscle spasm. The diagnosis was (1) acute lower back pain, and (2) history of herniated nucleus pulposus. The plan was to add a muscle relaxant to his current regimen.

Dr. Alfred Kahn, M.D., plaintiff's orthopedic surgeon, performed a posterior spine fusion on plaintiff's lumbar spine at L4, L5 and S1 on October 3, 2003. (Tr. 134). The indications for surgery were "persistent ongoing back and leg pain," MRI and X-ray evidence showing significant spondylolisthesis, and lateral recess stenosis. The preoperative and postoperative diagnosis was spondylolisthesis L5 on S1 with lumbar instability and radiculopathy. (Tr. 134).

On January 15, 2004, plaintiff was seen by the physical therapist. (Tr. 252-253). Plaintiff reported that he was experiencing "a nearly constant 5/10 pain," which he described as an achy soreness, on the left side of his low back and in his left buttock, with periodic tingling into his lower left extremity, and left thigh numbness. (Tr. 252). Plaintiff continued to wear a soft-shell corset but was wearing a hard-shell brace only for long walks on uneven terrain. He reported increased pain with prolonged sitting, standing, walking, bending, and sleeping and

10

disrupted sleep due to pain. He had been walking eight miles per day in the first month or so following surgery but had decreased this since the weather had changed. The therapist noted as his objective findings that plaintiff ambulated into the clinic "with a slow, guarded gait pattern" and that he stood "with a slight decrease in his lumbar lordosis." (Tr. 252). He had increased left low back and hip pain with left side bending and end range of motion of flexion. Plaintiff reported numbness and decreased sensation to light touch in his left lateral thigh. He also reported moderate tenderness to palpation of the left lumbar paraspinal, left lateral buttock and piriformis muscle, and joint levels L4 to S1. His manual muscle test scores were primarily 5/5 and the remaining scores were 4+. Plaintiff displayed decreased flexibility bilaterally. Straight leg raising was negative for neurological pain bilaterally but reproducing back pain. The problems noted were:

1. Increased low back pain upwards of 5/10.
2. Decreased painful spinal range of motion in all planes.
3. Decreased lower extremity stabilization strength.
4. Decreased functional ability.
5. Altered sleeping pattern.

The treatment plan was aquatic exercise, treadmill walking as tolerated, manual therapy techniques, and pain control. The rehabilitation potential was listed as "Fair."

On March 17, 2004, Dr. Kahn evaluated plaintiff six-months post-fusion surgery. (Tr. 293). He stated that plaintiff was "actually doing beautifully," his fusion "looked terrific," and he felt well. (Tr. 293). Dr. Kahn noted that plaintiff needed to begin a job search or reeducation as he could not do heavy work but he could carry 20 pounds and walk an unlimited amount. Dr. Kahn noted that plaintiff could not "be bending, twisting and lifting all the time." (Tr. 293).

In April 2004, plaintiff was discharged from active physical therapy to follow up with his

11

referring physician after having significantly improved his range of motion, strength and stability of the spine and attaining a 24% disability score on the low back pain questionnaire. (Tr. 227).

Dr. Kahn performed surgery to redo plaintiff's spinal fusion and remove the hardware on August 24, 2004, after plaintiff began experiencing significant back and leg pain following a functional capacity evaluation. (Tr. 138). On June 20, 2005, Dr. Kahn evaluated plaintiff ten months post-surgery. (Tr. 290). Dr. Kahn noted that plaintiff looked "absolutely spectacular" and that his fusion was "as solid as it could possibly be," while cautioning that his back "is not normal. He knows that. He needs to be cautious about what he does. As long as he takes care of himself, I think he will be able to go a lifetime with what he has." (Tr. 290).

Dr. Kahn saw plaintiff for an evaluation and consultation on September 15, 2005, after plaintiff had been involved in a motorcycle accident where he had to "lay the bike down." (Tr. 287). The treating orthopedist reported that plaintiff had been doing well following the metal removal in August of 2004 but that he now had left-sided low back pain and left leg pain which was different from his previous pain. The physical exam showed that plaintiff walked heel to toe with difficulty, he had only a jog of motion on any plane, and he had positive straight leg raising on the left and only mildly positive straight leg raising on the right. The diagnosis was possible disc injury above fusion. (Tr. 287).

Dr. Kahn evaluated plaintiff on October 6 and 31, 2005. (Tr. 286). He reported that an MRI had not disclosed anything new. Plaintiff reported some soreness and numbness when he sat, for which Dr. Kahn prescribed epidural steroids at L4-5. Dr. Kahn stated that he did not know why plaintiff was having so much left leg pain, and he ordered a CT scan and a second epidural steroid since the first one had not been very beneficial.

12

Dr. Kahn evaluated plaintiff again on November 14, 2005. (Tr. 286). He noted that

plaintiff "has some stenosis worse to the left at L5-S1 in the foramin which does go along with

his symptoms. I am going to have him try and get some nerve root injections and see if that will

help him out. If that does not help there is not much else for me to do for him." (Tr. 286). Dr.

Kahn also noted that,

> The patient complains of severe popping in his back with leg pain, numbness, etc.
> He has nothing that is really bad that would keep him from functioning in that
> regard that I can see on the CT scan, the MRI, or his plain x-rays with a solid
> fusion . . . . I hope that the nerve root injections help him as that is about all we
> can really do for him at this point.

(Tr. 286).

On December 29, 2005, after 13 physical therapy sessions, plaintiff's back pain

questionnaire showed a slightly higher score of 24% disability as compared to the initial

evaluation measurement of 22% disability. (Tr. 191).

Dr. Kahn saw plaintiff for the final time on January 12, 2006. (Tr. 285). He stated that

plaintiff's injections had not helped him at all and that plaintiff had some arthritis at 3-4 and 4-5

with some bony encroachment at 5-1. Dr. Kahn opined that,

> [He h]as symptoms that are consistent with an S1 radiculopathy but with the solid
> fusion and the fact that the injections were of no value for him I am very reluctant
> to suggest further surgery to him. I have told him that he is probably well to
> consider disability. I will support him in this. With his symptoms I do not think
> he can pursue remunerative employment. I will keep an eye on him as he needs it
> for his disability.

(Tr. 285).

A non-examining state agency medical consultant, Dr. James Gahman, M.D., completed

an RFC assessment on June 27, 2006. (Tr. 276-283). Dr. Gahman, a general practitioner, found

that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; he could stand

and/or walk about 6 hours in an 8-hour workday; he could sit about 6 hours in an 8-hour

workday; his ability to push and/or pull was unlimited; and he could climb, kneel and crouch

occasionally and could never balance or crawl.  Dr. Gahman summarized the objective evidence

on which his findings were based as follows:

> DC gave the clmt a diagnosis of DDD at L5-S1 with a 20% spondylolithesis and
> bilateral foraminal stenosis in 6/05.  He reported muscle spasms in the lumbar
> spin[e].  He reported that he had a gait abnormality and was using a cane at that
> time.  He had surgery and was doing well.  A MVA aggravated his condition after
> surgery.  He had spinal fusion in /04.  A PE of 9/05 showed heel and toe walk
> with difficulty.  +SLR on the left at 60 degrees and mildly positive at 90 degrees
> on the right.  Reflexes are symmetrical and equal at the knees and ankles.  Normal
> motor and normal sensory.  XR showed solid fusion L4 to sacrum with abundant
> bone mass.  No other significant abnormality appreciated.  1/06 status- -arthritis at
> L3-4 and L4-5.  Has sympotms [sic] that are consistent with radiculopathy. solid
> fusion.  Reluctant to recommend more surgery.  MRI in 10/05 did not reveal
> anything new.

(Tr. 277-78).

Plaintiff went to the emergency room for treatment of back pain on August 26, 2006,

following an automobile accident where he was struck from behind while driving an SUV and

towing a dolly.  (Tr. 340).  The discharge diagnosis was intractable low back pain and lumbar

radiculopathy with side effects due to narcotics.  (Tr. 342).

Dr. Stephen Pledger, M.D., plaintiff's treating orthopedist, first examined plaintiff during

his hospitalization on August 27, 2006.  (Tr. 338-339).  Dr. Pledger summarized plaintiff's

illness, in pertinent part, as follows:

> [Plaintiff] has had multiple back problems since 2002.  The patient injured
> himself back in 2002.  Ultimately he had a fusion done in 2004 . . . . [He]
> continued to have some difficulties.  He had the rods removed from his back.  He
> was involved in a motorcycle accident in September of 2005.  A new MRI did not
> show any abnormalities.  Prior to that motorcycle accident, he had done extremely
> well with the fusion and was only taking Advil for pain.  From the time of the
> motorcycle accident even until this accident, he was on chronic medication.  He

14

> was having unrelenting pain [ ] which it did not resolve. He was than [sic] on 8/16 involved with another accident where a dump truck had hit him and the pain has gotten extremely worse. He has had some hypersensitivity in his left leg prior to the first surgery. That pretty much resolved or was barely noticeable until the motorcycle accident and it has gotten extremely worse. Now he is having more hypersensitivity since the last accident . . . .

(Tr. 338). Physical examination disclosed the following findings related to his back:

> . . . The back exam shows marked tenderness from about T10 to L1. This is hypersensitivity and there may even be some kyphosis noted at that level. At the level of his previous surgery from L4-S1, he is also sensitive. He has tenderness over both S1 joints and both buttocks but not over the sciatic notch.

> Muscle strength testing in both lower extremities appeared to be weak but the left was much worse than the right. Sensation, he had decreased feeling in the left lateral thigh and left lateral calf but any touching of the foot almost sends him into a frenzy and he wants to jump off of the bed. He did have positive straight leg raising bilaterally but much, much worse on the left side compared to the right with a positive Lasegue's test. That generated pain in his back area.

(Tr. 338). Dr. Pledger's impressions were (1) mechanical low back pain post laminectomy, (2) status post degenerative disc disease at L4-5 and L5-S1, (3) status post fusion at L4-5 and L5-S1, (4) lumbar radiculopathy, and (5) Reflex Sympathetic Dystrophy (RSD) of the lower left extremity. (Tr. 338).

Following plaintiff's hospitalization, he was seen at Dr. Pledger's Orthopedic and Spine Center five times between September 2006 and May 2008. (Tr. 307-324). Examination and muscle strength testing yielded several positive findings, including paraspinal tenderness on both the right and left side of the lumbar spine and tenderness over the left sacro-iliac joint, the left sciatic notch, and the left buttock; muscle spasm on the left of the back; radiation to the low back on straight leg raising; muscle weakness "on the left"; and decreased sensation in the left leg. (Tr. 308, 314, 318). Both toe and heel walking were weak, reflexes were absent in both legs, and the Gower sign was positive. (Tr. 308, 311, 314, 318). In addition to his other diagnoses, on

15

February 2, 2007, plaintiff was diagnosed with Arachnoiditis.[1] (Tr. 315). It was observed that plaintiff needed a walker, cane or other device to ambulate and that he needed an assistive device or both hands to get out of a chair. (Tr. 308, 314).

Plaintiff had an MRI on January 23, 2007. (Tr. 305-306). The MRI disclosed no significant overall change in the appearance of the lumbar spine when compared to the prior examination of August 27, 2006. (Tr. 306).

Dr. Pledger completed an RFC assessment of plaintiff on November 6, 2008. (Tr. 355-357). Dr. Pledger opined that plaintiff could frequently lift and carry light weights; he could stand and walk 10 minutes during an 8-hour day; he could sit ½ hour during an 8-hour day; he could never climb, balance, stoop, crouch, kneel or crawl; and his ability to reach and to push and pull were affected. Dr. Pledger noted that plaintiff's sleep was greatly disturbed - "2 hours per night" - and that he was unable to lift any heavy object. (Tr. 356). The medical findings Dr. Pledger listed to support his assessment were as follows:

- Reflex Sympathetic Dystrophy characterized by leg numbness and a pins and needle feeling, with the only relief provided by a TENS unit, anti-inflammatory medication, rest and the use of a cane.

- Mechanical low back pain starting in the lower back and present all of the time, with symptoms and flare ups characterized by pain, tingling and numbness.

- Leg weakness, which causes plaintiff's leg to buckle and plaintiff to fall.

- Plaintiff was ambulating with a cane, which he had to use for balance due to leg weakness and pain, and experiencing moderate to severe sharp, stabbing pain radiating into the left buttock, the left hip, the left thigh, and the left lower extremity.

- Extension of the back was positive for pain at 10 degrees.

---

[1] "Arachnoiditis" is an inflammation of the arachnoidea, which is the membrane forming the middle of the three membranes covering the spinal cord. *Dorland's Illustrated Medical Dictionary* (31st ed. 2010).

(Tr. 355-357).

Dr. Ron Koppenhoefer, M.D. examined plaintiff for the Bureau of Workers

Compensation on June 26, 2007. (Tr. 303-304). Dr. Koppenhoefer stated that plaintiff's gait

was abnormal, and he noted truncal stiffness. Flexion was limited to 20 degrees, extension was

limited to 5 degrees, and right/left lateral bending was limited to 5 degrees. Dr. Koppenhoefer

noted hypersensitivity involving the left leg. He also noted that plaintiff's hands were "well

calloused and quite dirty" and that plaintiff explained his hands had become dirty while taking

care of his children. (Tr. 303). Dr. Koppenhoefer determined plaintiff to have a 23% disability.

Dr. Koppenhoefer stated that the range of motion method could not be used to evaluate plaintiff

because of the inconsistent responses noted during the course of the physical exam. (Tr. 304).

## OPINION

**1. Assignment of Error 6:[2] Did the ALJ/Appeals Council err by failing to give weight to the uncontroverted opinion of a treating physician that plaintiff's condition of Arachnoiditis met or equaled the Listing of Impairments, Appendix 1 to Subpart P of Part 404, 1.04 B, and by failing to obtain a medical opinion?**

The ALJ determined that plaintiff does not have an impairment or combination of

impairments which meets the Listing because his lumbar impairment does not preclude effective

ambulation as required by Listing 1.04. Plaintiff argues that the ALJ and Appeals Council erred

by (1) failing to give due weight to Dr. Pledger's opinion that plaintiff's condition of

Arachnoiditis met or equaled the Listing, and (2) failing to obtain a medical opinion from a

medical expert as to whether plaintiff's impairment was equivalent in severity to any impairment

in the Listing in accordance with SSR 96-6p. Plaintiff notes two obligations that SSR 96-6p

---

[2]The Court will consider plaintiff's assignments of error in accordance with the order set forth in the sequential evaluation process rather than in the order in which he has numbered them.

imposes on the ALJ/Appeals Council.  First, the ALJ or Appeals Council must obtain an updated

medical opinion where additional medical evidence is received which in the opinion of the ALJ

or the Appeals Council could modify the state agency medical consultant's finding that an

impairment was not equivalent in severity to any impairment in the Listing.  Second, when an

updated judgment as to medical equivalence is required at the ALJ level, the ALJ must call on a

medical expert.[3]  Plaintiff alleges that in this case, a consultative exam was not performed and

the state agency medical opinions were rendered at a time when the record was incomplete, and

certainly before the submission of records from plaintiff's treating physician indicating that his

condition met or equaled the Listing.

The Commissioner argues that the ALJ reasonably determined that plaintiff did not meet

or equal the requirements of any listed impairment.  (Tr. 17).  Dr. Pledger's April 20, 2009

opinion, upon which plaintiff relies for his argument, was not submitted until his request for

review by the Appeals Council.  The Commissioner argues that because this evidence was not

before the ALJ when she rendered the Commissioner's final decision, the Court cannot consider

it in determining whether the decision is supported by substantial evidence.  Instead, the

Commissioner contends the Court may consider that evidence only for the purpose of

determining whether the case should be remanded to the Social Security Agency (SSA) pursuant

to the Sixth Sentence of 42 U.S.C. § 405(g).

Following the hearing, but before the ALJ had issued her decision, plaintiff submitted a

one-page report from Dr. Pledger dated January 28, 2009, diagnosing plaintiff with Reflex

---

[3]The Ruling also provides that the ALJ or Appeals Council must obtain an updated medical opinion from a medical expert when no additional medical evidence is received but in the opinion of the ALJ or Appeals Council the findings and symptoms suggest that a judgment of equivalence may be reasonable.

Sympathetic Dystrophy of the lower limb, Arachnoiditis, herniated nucleus pulposus L5-S1 left,

mechanical low back pain and lumbar sprain. (Tr. 358). Dr. Pledger stated,

> Mr. Bryant has sustained two devastating conditions as a result of previous
> surgeries. He has developed Arachnoiditis as the result of spinal surgery for a
> ruptured disk at the L5-S1 level. He has developed Reflex Sympathetic
> Dystrophy as a result of surgery on his leg. Either one of these two conditions can
> cause total disability. He doesn't have one of these conditions but both.

(Tr. 358).

Subsequently, after the ALJ had issued her decision, plaintiff submitted supplemental

evidence to the Appeals Council. One item of evidence is Dr. Pledger's January 28, 2009 report

with a second page attached. (Tr. 373-374). In the second page of the report, Dr. Pledger opined

that plaintiff is permanently and totally disabled as a result of Arachnoiditis and Reflex

Sympathetic Dystrophy and assessed plaintiff's physical capabilities as follows:

- He can carry 5 pounds frequently and 10 pounds occasionally, and it
  would be extremely difficult for him to carry anything heavier than 10
  pounds because he ambulates with a cane, and the mechanical low back
  pain and arachnoiditis would make it virtually impossible for him to carry
  anything heavier.

- He can stand for approximately 15 minutes without interruption and for
  approximately 1-2 hours over an 8-hour period.

- He can sit for 30 to 45 minutes without interruption and for a total of 2-3
  hours over an 8-hour work schedule.

(Tr. 374).

Plaintiff also submitted a letter from Dr. Pledger to his counsel dated April 20, 2009,

setting forth Dr. Pledger's opinion as to plaintiff's limitations. (Tr. 377-379). In the letter, Dr.

Pledger stated that he agreed that plaintiff's condition meets Listing 1.04 A and 1.04 B. He listed

the same diagnoses as set forth in his January 28, 2009 letter. Dr. Pledger opined that plaintiff

19

should not carry more than 10 pounds due to the fact that he is walking with a cane or walker; it would be very difficult for him to walk or stand more than an hour for the total 8-hour period; he could not stand for more than 15 minutes without having to sit down; and he could sit for 30 minutes at a time and for 2 to 3 hours over an 8-hour period of time.

When the Appeals Council declines review, as it did in this case, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). The Court may not consider evidence presented for the first time to the Appeals Council in deciding whether to uphold, modify, or reverse the ALJ's decision. *Id.* at 696. *See also Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). Accordingly, the Court may not consider Dr. Pledger's April 2009 letter in deciding whether to uphold, modify, or reverse the ALJ's decision.

"The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d at 148. Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citations and internal quotation marks omitted). To show "good cause," the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id.*

Plaintiff has not shown good cause for failing to obtain Dr. Pledger's opinion contained

20

in the April 20, 2009 letter prior to the date the ALJ issued her opinion.  Plaintiff does not allege

that the information in the letter is new or that he could not have obtained the information prior

to the issuance of the ALJ's decision.  Therefore, plaintiff is not entitled to a Sentence Six

remand based on new and material evidence.

Plaintiff's contention that the ALJ and Appeals Council erred in failing to obtain an

updated medical opinion pursuant to SSR 96-6p as to whether he met the Listing for

Arachnoiditis is likewise not well-taken.  Plaintiff has not shown that the circumstances which

require the ALJ or Appeals Council to obtain an updated medical opinion from a medical expert

are present in this case.  Nor did the ALJ err in failing to determine that plaintiff's impairment

met or equaled the Listing for Arachnoiditis.  Listing 1.04 B, "Disorders of the spine," sets forth

the following criteria:

> [S]pinal arachnoiditis . . ., resulting in compromise of a nerve root . . . or the
> spinal cord . . . confirmed by an operative note or pathology report of tissue
> biopsy, or by appropriate medically acceptable imaging, manifested by severe
> burning or painful dysesthesia, resulting in the need for changes in position or
> posture more than once every 2 hours . . . .

Plaintiff has not pointed to any medical evidence that was before the ALJ which shows that his

impairment meets or equals 1.04 B.

Plaintiff further alleges that the ALJ violated 20 C.F.R. § 404.1512(e) by failing to re-

contact treating sources to obtain additional information and verification, or to obtain "a post-

therapy consultative exam."  The Commissioner claims that the ALJ was not required to

recontact Dr. Pledger because she considered all of the relevant matters, including plaintiff's

testimony, plaintiff's entire medical record, and her own observations of plaintiff as a witness in

reaching her conclusion, and she reasonably did not rely on Dr. Pledger's opinion.

21

Title 20 C.F.R. § 404.1512(e) requires the Commissioner to recontact a treating physician or other medical source when the evidence the Commissioner has received is inadequate to permit a determination as to whether the plaintiff is disabled.  It provides that the Commissioner "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or [the report] does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Title 20 C.F.R. § 404.1512(f) provides that if the information the SSA needs is not readily available from the records of the treating physician or if clarification cannot be sought from the treating physician, the plaintiff will be asked to attend one or more consultative exams at the SSA's expense.

Plaintiff claims that there was no conflict in the medical evidence and that Dr. Pledger's conclusions are supported by his medical findings.  (Doc. 5 at 19).  In light of plaintiff's representations, it is not clear what additional evidence or clarification plaintiff believes the ALJ should have sought from Dr. Pledger or through a consultative exam.  Thus, plaintiff has not shown that the ALJ and the Appeals Council violated § 404.1512(e) and (f) by failing to obtain an additional medical opinion.

**2.  Assignments of Error 2 and 3: Did the ALJ err in failing to comply with 20 C.F.R. § 404.1527 by not according adequate weight to the opinion of Dr. Pledger, by not providing reasons for rejecting Dr. Pledger's RFC assessment, and by failing to consider the factors set forth in 20 C.F.R. § 404.1527(d) when evaluating Dr. Pledger's opinion?**

The ALJ determined that plaintiff suffers from a severe back impairment, degenerative disc disease of the lumbar spine.  (Tr. 16).  However, the only limitations she placed on plaintiff's  functioning is that he be limited to light work with the restrictions noted.  (Tr. 17).

22

Plaintiff alleges the ALJ's RFC finding is not supported by substantial evidence. The Court agrees and determines that the ALJ failed to follow applicable Social Security Regulations and Sixth Circuit law in evaluating and weighing Dr. Pledger's opinion on plaintiff's limitations.

When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, *and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p; *Wilson*, 378 F.3d at 544) (emphasis added)). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407 (emphasis in the original and quoting *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ indicated that Dr. Pledger's assessment was not credible and stated that his opinion was "contradicted by the objective and clinical evidence of record." (Tr. 19-20). She stated that "No MRI or CT scan has revealed any worsening in the severity of the claimant's lumbar impairment." (Tr. 19). The ALJ also pointed to two objective medical findings identified by Dr. Pledger as the basis for plaintiff's functional limitations which she determined did not support those limitations: (1) Dr. Pledger's diagnosis of Reflex Sympathetic Dystrophy,

23

which she determined was not supported by appropriate clinical findings such as decreased

sensation or temperature changes in the appropriate extremity, and (2) numbness in the left leg,

which she determined was not supported by loss of sensation in that extremity on physical

examination. (Tr. 20). However, the ALJ ignored Dr. Pledger's findings of decreased sensation

in the left leg and leg muscle strength test results showing weakness "on the left." (Tr. 318, 338).

Moreover, the ALJ did not specifically reference any of the other medical findings contained in

Dr. Pledger's treatment notes spanning the period from August 2006 to May 2008 (Tr. 307-324),

and the ALJ failed to provide an explanation for rejecting the particular limitations Dr. Pledger

identified based on the remaining evidence in the record.

In addition, there is no indication in the ALJ's decision that she considered the regulatory

factors set forth in 20 C.F.R. § 404.1527(d)(2) in determining the weight to afford Dr. Pledger's

opinion, including the length, frequency, nature, and extent of the treatment relationship and the

consistency of Dr. Pledger's conclusions with the other evidence in the case record. *See Blakely*,

581 F.3d at 406. The ALJ failed to assign any weight to Dr. Pledger's opinion although certain

factors support affording Dr. Pledger's opinion considerable weight. Dr. Pledger has treated

plaintiff since 2006, he has seen plaintiff on a consistent basis, and the record contains two years'

worth of progress notes documenting Dr. Pledger's examinations, tests, and treatment for

plaintiff's back impairments.

Moreover, Dr. Pledger's opinion is substantiated by that of the treating orthopedic

surgeon, Dr. Kahn, who opined that plaintiff's back impairment had reached a point where it

became disabling. The ALJ failed to give any consideration to the assessment and medical

findings of Dr. Kahn to the extent they were consistent with those of Dr. Pledger. The ALJ noted

24

that although Dr. Kahn had stated on January 12, 2006, that plaintiff could not perform

remunerative work activity based on his symptoms, Dr. Kahn had earlier stated in February of

2005 that plaintiff could perform light activity. (Tr. 20, 285, 290). Yet, the ALJ ignores

plaintiff's intervening motorcycle accident in September 2005 and the residuals therefrom which

would account for the change in Dr. Kahn's opinion. (Tr. 287, 338). In addition, the ALJ found

that Dr. Kahn had not referred to objective test results or clinical findings to support his opinion

that plaintiff was disabled. (Tr. 20). However, the ALJ ignored Dr. Kahn's findings that plaintiff

had some arthritis and bony encroachment, that his symptoms were consistent with SI

radiculopathy, and that he had been receiving nerve root injections which had provided him no

relief. (Tr. 285). Moreover, the ALJ gave no weight to the fact that Dr. Kahn was the treating

orthopedist and surgeon who had followed plaintiff since his surgery in October 2003. (Tr. 20).

     The ALJ rejected the opinions of the treating orthopedist Dr. Pledger and the treating

orthopedic surgeon Dr. Kahn in favor of the opinion of the non-examining state agency medical

consultant. (Tr. 19). The ALJ determined that the opinion of the medical consultant was

consistent with the weight of the evidence, "which demonstrates only mild symptoms of a

radiculopathy," and was entitled to significant weight as it took into account the nature and

severity of plaintiff's lumbar impairment as documented by the objective clinical findings. (Tr.

19). Although the ALJ was not bound by Dr. Kahn and Dr. Pledger's opinions, she was

obligated to articulate "good reasons" based on the evidence of record for not giving weight to

the opinions of the treating physicians which support a finding of greater restrictions on

plaintiff's functioning. *Wilson*, 378 F.3d at 544. The ALJ failed to do so. Instead, she relied on

a report by a non-examining medical consultant which pre-dated her decision by more than two

years and pre-dated any of Dr. Pledger's examinations and treatment; she culled the negative

findings from the record to support her rejection of the treating physicians' opinions; and she

ignored the objective findings that supported their conclusions. The ALJ's rejection of Dr.

Pledger and Dr. Kahn's opinions is thus inconsistent with the legal standards applicable for

determining the weight to accord a treating physician's opinion and lacks substantial support in

the record. *Blakely*, 581 F.3d at 407. Accordingly, plaintiff's second and third assignments of

error should be sustained.

**3. Assignments of Error 4 & 5: Did the ALJ err in failing to provide the specific rationale for rejecting the plaintiff's testimony as required by SSR 96-7p, by failing to properly apply the pain standard required under Sixth Circuit law, and by making credibility findings which are not based on a full and accurate reading of the record?**

To the extent plaintiff argues that the effects of his chronic pain and pain medication must

be evaluated in light of SSR 03-2p, which pertains to RSD (Doc. 5 at 14), his argument is

without merit. The Ruling lists five clinically documented signs of RSD, any one of which can

establish the disorder for purposes of Social Security disability evaluation: swelling, autonomic

instability (manifested by changes in skin color or texture, decreased or excessive sweating,

changes in skin temperature, and gooseflesh); abnormal hair or nail growth; osteoporosis; or

involuntary movements of the affected region of the initial injury. Although Dr. Pledger made a

diagnosis of RSD, plaintiff has failed to direct the Court's attention to any specific evidence in

the record  showing that he manifests any of the symptoms set forth in SSR 03-2p. Therefore,

the Court finds that the ALJ did not err by failing to evaluate plaintiff's complaints of pain

pursuant to SSR 03-2p.

Nevertheless, the Court determines that the ALJ's credibility finding is otherwise without

substantial support in the record. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the capacity to do light work with restrictions. (Tr. 17-18). The ALJ acknowledged that a claimant's statements about the intensity and persistence of symptoms, such as pain, will not be rejected solely because the available medical evidence does not substantiate the symptoms, so long as the alleged functional limitations can reasonably be accepted as consistent with the objective medical and other evidence. (Tr. 19). However, she rejected plaintiff's statements about the intensity and persistence of his pain based on four primary reasons: the lack of side effects from medication; the absence of consistent neurological deficits; plaintiff's conservative treatment following his two surgeries; and his daily activities. (Tr. 18-20). With the exception of the ALJ's finding on the absence of side effects from medications, the other reasons given for rejecting plaintiff's allegations of pain and limitations are not substantially supported by the record evidence.

First, the ALJ stated that the record did not document consistent loss of neurological function, such as reflex, sensory or motor deficit. (Tr. 19). However, the ALJ failed to cite to specific evidence in the record to support her determination as required under SSR 96-7p. (Tr. 19). SSR 96-7p provides that the ALJ's "decision must contain specific reasons for the finding of credibility, *supported by the evidence in the case record*, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." (emphasis added). The ALJ's failure to identify the evidence she relied upon in this regard renders it difficult for this Court to trace the

27

path of the ALJ's reasoning. Moreover, a review of the record shows the ALJ ignored treatment

notes which document neurological findings supporting plaintiff's allegations of pain and

limitations, including those after plaintiff's two motor vehicle accidents in 2005 and 2006. (*See,*

*e.g.*, Tr. 287-walked heel to toe with difficulty, only a jog of motion on any plane, positive

straight leg raising on left; Tr. 318-toe and heel walking weak bilaterally; decreased sensation

left leg; positive Gower sign; muscle spasms; positive straight leg raising on left; absent ankle

reflexes on right and left; weak muscle strength left leg; Tr. 314-toe and heel walking weak on

left; positive Gower sign; positive straight leg raising on left; absent knee and ankle reflexes

bilaterally; weak muscle strength left leg; Tr. 311-gait antalgic on left side; inability to heel or

toe walk bilaterally; positive Gower sign; absent knee and ankle reflexes bilaterally; weak muscle

strength left leg; Tr. 308-heel walking weak bilaterally; positive Gower sign; positive straight leg

raising on left with intensity of 1+ with pain radiation to hamstrings in left leg; absent left ankle

reflex; muscle strength weak on left of peroneals (L5-S1) and hamstrings (L5-S1); increased

sensation in left leg; Tr. 338-muscle strength testing in both lower extremities weak, with left

much worse than right; decreased sensation left thigh and calf; positive straight leg raising

bilaterally with left side much worse than right). The ALJ's selective citation to the medical

findings which place plaintiff in a more capable light to the exclusion of findings to the contrary

does not accurately describe plaintiff's abilities and renders those portions of the ALJ's decision

unsupported by substantial evidence. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th

Cir. 2002).

Second, the ALJ doubts plaintiff's credibility based on the conservative care he received

"following his surgeries," but she gives no indication of what additional care she believes

28

plaintiff should have sought. (Tr. 19). Rather than viewing plaintiff's consistent attempts to obtain relief as corroborating evidence of his pain, the ALJ appears to have discounted plaintiff's credibility because he allegedly has been unable to obtain relief despite his ongoing treatment and he is not a candidate for further surgery. She stated in connection with her credibility findings that plaintiff saw a physician "only for pain management treatment" as he does not have "a surgical lesion that should be corrected." (Tr. 20). The ALJ fails to explain how the absence of a correctable lesion weighs against plaintiff's credibility. She also neglects to mention that Dr. Kahn was "very reluctant to suggest further surgery" despite the fact that nerve root injections he had prescribed had brought plaintiff no relief. (Tr. 285).

Third, the ALJ discounted the significance of plaintiff's testimony concerning the impact of his impairments on his daily activities because such "limited daily activities cannot be objectively verified with any reasonable degree of certainty," and even if they were truly limited, "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Tr. 20). Yet, the ALJ failed to identify the "other reasons" accounting for the limitations on plaintiff's daily activities. More importantly, the ALJ failed to explain how the limitations to which plaintiff testified were inconsistent with the statements and reports of plaintiffs' treating orthopedist and orthopedic surgeon, both of whom supported plaintiff's allegations of pain and limitations. *See Felisky,* 35 F.3d at 1037-1038. The evidence from plaintiff's treating doctors is contrary to the ALJ's conclusion and, as explained above, the ALJ failed to provide good reasons for discounting their opinions.

Finally, the ALJ determined that plaintiff is not credible because the treatment notes

29

demonstrate that plaintiff receives significantly more pain relief than he reported at the hearing. (Tr. 19). The ALJ neither explained her finding nor cited to specific portions of the record to support her conclusion. The Court is therefore unable to discern what the ALJ meant by this statement and cannot determine whether her conclusion is valid.

In short, the ALJ's selective citations to the medical records do not fairly portray plaintiff's medical state for the relevant time period. They therefore do not constitute substantial evidence to support her credibility determination. Although the ALJ was not bound to accept plaintiff's statements about his pain, the ALJ was obligated to follow the Social Security Rules and Regulations and the law of this Circuit in assessing plaintiff's credibility. The ALJ failed to do so in this case. Accordingly, plaintiff's fourth and fifth assignments of error should be sustained.

## CONCLUSION

For all the reasons set forth above, the Court finds that the ALJ's decision is not supported by substantial evidence and should be reversed. However, the Court notes that while all essential factual issues have not been resolved in this matter, neither does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *See Faucher,* 17 F.3d at 176. Indeed, the record suggests that plaintiff's physical condition significantly deteriorated following his two motor vehicle accidents in 2005 and 2006. Accordingly, this matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinions of plaintiff's treating physicians and an explanation on the record therefor; reconsideration of plaintiff's RFC; and reconsideration of plaintiff's credibility consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 2/1/2011

Karen L. Litkovitz

United States Magistrate Judge

31

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERT E. BRYANT,                              Case No. 1:09-cv-810
        Plaintiff,                          Weber, J.
                                                 Litkovitz, M.J.

    vs

COMMISSIONER OF                               **REPORT AND**
SOCIAL SECURITY,                              **RECOMMENDATION**
        Defendant,


## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).